IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | 21-CR-20067-COOKE |
| LATOYA STANLEY | § | |

### GOVERNMENT'S RESPONSE TO DEFENDANT STANLEY'S OBJECTION TO PRESENTENCE REPORT

The United States, by and through the undersigned Trial Attorney, hereby submits its response to the objections of Defendant Latoya Stanley to the Presentence Report (PSR), showing as follows:

### Statement of Facts

Defendant Stanley conspired with other individuals to submit two fraudulent loan applications: a Payroll Protection Program (PPP) application on behalf of her entity "Dream Gurl" and an Economic Injury Disaster Loan (EIDL) application where she personally claimed to be a farmer. Both applications contained numerous lies and forged tax documents. On recorded calls with a government agent who Defendant Stanley believed to be a bank employee, Defendant Stanley continued her attempted deception by confirming the lies in the applications. Due to Defendant Stanley's fraudulent loan applications, she received $302,860 in PPP funds and received $137,500 in EIDL funds. In addition, Defendant Stanley utilized third party payroll services to launder the funds she received and make it appear as if Dream Gurl actually employed dozens of individuals.

On the day of Defendant Stanley's arrest, agents executed a search warrant on the residence that she and her co-defendant shared. Inside, agents located notebooks full of personal

identifying information (including social security numbers) for third parties, 70 credit cards in the name of various third parties, $9,260 in cash, and $60,000 in money orders.

In short, Defendant Stanley stole over $400,000 in government funds that were meant to aid individuals who had lost their jobs and livelihoods due to the pandemic.

## Response to Objections from Defendant Stanley

**1) Stanley Engaged in a Sophisticated Scheme to Defraud the PPP Via Her Shell Company "Dream Gurl."**

Defendant Stanley objects to the sophisticated means enhancement, which appears in paragraph 63 of the PSR. As grounds for the objection, the defense states that Defendant Stanley's role in the scheme was unsophisticated. The government respectfully requests that the court not credit the argument.

First, Defendant Stanley has provided no evidence that others were the leaders or organizers of this scheme. Defendant Stanley used her own business entity to receive a fraudulent PPP loan. She, herself, as evidenced by bank surveillance footage, opened bank accounts for the sole purpose of receiving the PPP loan. Defendant Stanley communicated multiple times on a recorded line with a government agent, who she believed was a representative of a bank. In these calls, Defendant Stanley lied about her own business repeatedly and provided in depth information about her shell company, Dream Gurl, to try and revive the loan process after the bank suspected fraud. Further, Stanley created and ran fake payroll to launder the proceeds that she did receive. There is simply nothing in the record to show that Stanley was anything, but the leader of this scheme.

Even if the court were to credit the unsupported assertion that others aided Stanley in the sophisticated scheme, the sophisticated means enhancement under *2B1.1(b)(9)(C)* would still apply. The commentary to *U.S.S.G. § 2B1.1* provides in pertinent part that, "'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *U.S.S.G. § 2B1.1*, comment. (n.8(B)). The commentary further notes that "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means."  The commentary finds support in the caselaw in many circuits.  *See United States v. George*, 841 F.3d 55, 66–67  (1st Cir. 2016) (corporation that acted as nominal owner of bus company sued to fraudulently divert federal funds); *United States v. Fumo*, 655 F.3d 288, 314–15 (3d Cir. 2011) (sham subsidiaries of non-profit corporation); *United States v. Arojojoye*, 753 F.3d 729, 740 (7th Cir. 2014) (fictitious businesses and acquisition of merchant accounts for sole purpose of defrauding credit card companies); *United States v. Jennings*, 599 F.3d 1241, 1254 (11th Cir. 2010) (shell corporations used to issue illegitimate worker's compensation insurance).

Additionally, the creation of false documents, even if the documents were easily generated and contained only simple falsehoods, may constitute sophisticated means.  *United States v. White*, 850 F.3d 667, 676 n.3 (4th Cir. 2017) (numerous false or forged documents, as well as creation of fictitious legal entity); *United States v. Edelman*, 458 F.3d 791, 816 (8th Cir. 2006) (creation and use of numerous false documents, including multiple years of federal tax returns, supporting federal tax documents, such as W–2 and 1099 forms, bank statements, incorporation records, profit and loss statements, and a series of bank letters); *United States v. Cianci*, 154 F.3d 106, 110 (3d Cir. 1998) (finding "sophisticated means" enhancement

appropriate where defendant's crime "involved the use of a shell corporation [and] falsified documents").

Defendant Stanley's company, Dream Gurl, is a shell company. There is no record of it doing any business. It does not pay taxes or employ any individuals. Defendant Stanley, either directly or through supposed co-conspirators, submitted a fraudulent loan application that included forged tax documents to defraud the government's pandemic aid program for small businesses. Defendant Stanley, either directly or through supposed co-conspirators, submitted forged tax documents in conjunction with her fraudulent economic injury disaster loan application. On top of that, Defendant Stanley attempted to launder the money she received via the use of a third party payroll processor. The laundering included the submission of social security numbers and other private information on behalf of individuals who seemingly had no knowledge about the scheme. In short, this scheme was nothing if not sophisticated. It involved a shell company, forged tax documents, fake payrolls, and money laundering. The two-level enhancement should apply.

2) **Per the Terms of the Plea Agreement, the Government Agreed not to Seek an Enhancement under 2B1.1(b)(12).**

For many of the reasons cited in Defendant Stanley's motion, the government does not believe that this enhancement is applicable in this case, and further agreed not to seek it.

3) **Defendant Stanley Was Not a Minor Participant in the Fraud.**

A defendant bears the burden of establishing her minor role by a preponderance of the evidence. *United States v. Rodriguez De Varon*, 175 F.3d 930, 939 (11th Cir. 1999); *accord United States v. Morrison*, 135 F. App'x 381, 383-85 (11th Cir. 2005). The Sentencing Guidelines permit a two-point decrease of a defendant's offense level if the court finds the

defendant was a "minor participant" in the crime. U.S.S.G § 3B1.2(b). When assessing whether a mitigating role reduction is appropriate, a district court "should be informed by two principles discerned from the Guidelines: first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." *De Varon*, 175 F.3d at 940. In looking to relevant conduct, "the district court must assess whether the defendant is a minor or minimal participant in relation to the relevant conduct attributed to the defendant in calculating [his] base offense level." *Id.* at 941. "In making the ultimate determination of the defendant's role in the offense, the sentencing judge has no duty to make any specific subsidiary factual findings." *Id.* at 939.

Moreover, "to receive a minor role reduction," the defendant "ha[s] to establish that []he was 'less culpable than,' not equally culpable to, 'most other participants....'" U.S.S.G. § 3B1.2, cmt. n.5; *accord United States v. Bond*, 362 F. App'x 18, 23 (11th Cir. 2010) (affirming denial of application of minor role in money laundering case). Here, the Defendant's role was not minor; it was the most common role in the conspiracy, and the essential one: she supplied the shell company, Dream Gurl.

To receive a PPP loan, a business had to exist, at least on paper, prior to the start of the pandemic. Defendant Stanley's corporate entity, although not in operation, was the vital and necessary ingredient to even attempt the fraud. Further, the specific claims made by the defense regarding her role in the scheme are unsupported by evidence. The defendant opened a bank account for the sole purpose of receiving a PPP loan. The defendant communicated about her entity on a recorded line with a government agent who she believed was a bank employee. The defendant communicated both on the phone and over email with the Small Business Administration regarding her EIDL loan. In all forms of communication, Defendant Stanley provided fraudulent information. The self-serving statements made by the defendant in her motion are uncorroborated and inconsistent with other evidence regarding her role in the case.

## Conclusion

The PSR correctly calculated Defendant Stanley's sentencing score, except for the two-point addition under § 2B1.1(b)(12). The court should find a total offense level of 17.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

*/s/ Louis Manzo*
Louis Manzo
Trial Attorney
Mass Bar No. 688337
1400 New York Ave NW
Washington, DC 20530
Tel: (202) 262-6570
Email: louis.manzo@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that a copy of the Government's Response to Defendant Stanley's Objection to Presentence Report has been served on Defendant by email on this the 24th day of May, 2021.

*/s/*_____
Louis Manzo